FISH and another, administrators of *Miller Fish,* deceased, *against* CATHARINE FISH.

The widow of a deceased mortgagor is entitled to dower in the equity of redemption.

THIS was an appeal, by the administrators of *Miller Fish,* deceased, from a decree of the court of probate for the district of *Hartford,* assigning dower, and appointing distributors to set out the same, to the widow.

The case was shortly this. *Miller Fish,* in his life time, being seised of several pieces of real estate, mortgaged them to several persons, some for as much as, and others for much less than, their value. These mortgages had all become forfeited at law, before the mortgagor's death ; and no part of the mortgage money had been paid. Neither of the mortgagees had entered ; nor had the equity of redemption in either pieces of land been foreclosed. The estate of the deceased was deeply insolvent ; and there were no personal assets to raise the mortgages.

The question of law arising in this case was reserved for the consideration and advice of the nine Judges.

*Perkins* and *S. Terry,* for the appellants, cited *Dixon* v. *Saville, Pow. Mort.* 720. & seq. S. C. 2 *Cruise's Dig. tit.* 15. *c.* 3. *s.* 10. S. C. 1 *Bro. Ch. Ca.* 326. *Nash* v. *Preston, Cro. Car.* 190. *Litt.* sect. 357. *Stat. Conn. tit.* 51. *c.* 1. *s.* 1.

*Edwards,* for the appellee, referred to *Hitchcock & al.* v. *Harrington,* 6 *Johns. Rep.* 290. *Collins* v. *Torry,* 7 *Johns. Rep.* 278. *Reeve's Domes. Relat.* 53., and was proceeding to discuss the question on principle, when he was stopped by the Court.

SWIFT, Ch. J. The question whether a widow can be endowed of an equity of redemption comes before this Court, the first time, for a decision ; and we are at liberty to decide it on principle.

It is provided by statute, that the wife shall have dower in one third part of the real estate of her husband, which he stood possessed of, in his own right, at his decease(*a*). The expression " in his own right," is intended to exclude dower

(*a*) *Tit.* 51. *c.* 1. *s.* 1.

in lands holden in the right of another, and does not require that the estate should be in fee-simple.

The enquiry then is, whether the mortgagor is not possessed of lands under a mortgage, in contemplation of law, so that the wife shall be endowed ?

It is true, upon strict technical principles, the fee of the land vests in the mortgagee ; yet to every practical purpose, it has always been considered, that he held the land only as a pledge for the security of his debt, and that he has the legal title only for the purpose of availing himself of the possession of the land that he may procure a satisfaction of the debt. *Reeves's Domes. Relat.* 53. The mortgage is a charge upon the land ; it will go to the executors ; and the assignment of the debt will draw the land after it as a consequence. 2 *Burr.* 978. In the settlement of an estate, a mortgage is always deemed to be personal assets. By a devise of all lands, a mortgage in fee will not pass, unless the equity of redemption has been foreclosed ; and if, after the devise, a foreclosure is had, such estate will not pass by general words, because a foreclosure is considered as a new purchase of the lands. *Casborne* v. *Scarfe,* 1 *Atk.* 603.

But the equity of redemption is considered as an estate in the land ; it may be devised ; it will descend to the heirs ; and may be levied upon by execution ; so that whatever may be the technical consequence of the form of conveyance, he who is entitled to the equity of redemption, is considered to be the owner of the land, while the mortgage is personal estate. This is undoubtedly the proper light in which to view a mortgaged estate ; because it is always in the power of the mortgagor, before foreclosure, to defeat the estate of the mortgagee, by payment of the money, and thereby regain a complete title ; while the mortgagee can acquire an absolute title only by foreclosure, which is in the nature of a new purchase.

It would then seem clear on principle, that a mortgagor having a right to redeem, has such title and possession of the mortgaged land, as would, by force of the statute, subject it to the dower of his wife.

But in *England,* it has been decided, that a widow cannot have dower in an equity of redemption. It seems, however, that this decision was adopted without due consideration, in analogy to trust estates, in which there can be no dower ;

for in cases precisely similar in point of principle, they have not adopted the same rule. They have decided, that the husband is entitled to curtesy in the equity of redemption of the wife ; and the reasons given by Lord *Hardwicke* for the decision would in all respects be applicable to the case of dower, and equally warrant it.   When an objection was made because the wife was refused dower, he very properly observed, if any innovations are to be made, the nearest way to right would be to let in the wife to dower in a trust estate, and not to exclude the husband from being tenant by the curtesy of it.  I apprehend, if the *English* courts were not bound by the unbending authority of a long course of precedents, they would discard this illiberal doctrine.  At any rate, we ought not to regard decisions opposed to the principle of analogous cases ; but we ought to furnish widows that reasonable provision from the estate of their husbands, which the law manifestly contemplates.

I am of opinion that the judgment of the court of probate ought to be affirmed.

In this opinion TRUMBULL, EDMOND, SMITH, BRAINARD, BALDWIN, GODDARD and HOSMER, Js. concurred.

GOULD, J.  If an equity of redemption is subject to dower, either in a court of law, or in chancery ; it is the duty of the judge of probate, who can act upon the principles that govern either of those jurisdictions, to assign it.

It is admitted, that by the rule established in *England*, the claim of the widow cannot be maintained ; though the reasonableness of that rule has been questioned in the *English* courts themselves, by very high authority.   And since the adoption of the modern and more liberal views, now entertained, of the nature and properties of an equity of redemption, the rule has been upheld, I think, by the *strength of precedent*, in opposition to principle.  1 *Black. Rep.* 160. At any rate, as it is confessedly a rigorous rule, and as the reasons, upon which it was founded, have ceased to operate in all analogous cases ; I can discover no sufficient motive for adopting it here.

The original and principal ground of objection to the allowance of dower in this species of estate, is entirely artificial, *viz.* that of a *pure trust,* since the statute of uses,

*Hartford,*
June, 1816.

Fish
*v.*
Fish.

(as of a mere *use* before,) there can be no *seisin* ; and therefore, that the husband, in a case like the present, could not have been *seised* ; his estate having been a mere equity, and in nature of a *trust.* And yet, it is remarkable, that *curtesy* has always been allowed in such an estate, upon the wife's mortgage in fee, this objection notwithstanding. A virtual seisin of an equity of redemption has also been recognized in various other cases. Thus, upon a forfeited mortgage in fee, the interest of the mortgagor is descendible and devisable ; though the strict rule of law requires a seisin by the ancestor, in the one case, and by the testator, in the other, as indispensable to the transmission of the title. It appears, also, to be an established rule, in *England,* that the mortgagor in possession may acquire a settlement, as *tenant of a freehold.* And by the better opinion, as I conceive, this species of estate admits of a *possessio fratris,* so as to alter the line of descent. It is material to observe further, that, at the time when the rule denying dower to the *mortgagor's* widow, was established, the widow of the *mortgagee* was supposed to be entitled to it—at least, it was doubted, whether she was not, (2 *Black. Com.* 158.) and if the question were to be governed by analogy to the doctrine of uses, (the very analogy on which the rule excluding dower in an equity of redemption is founded,) she certainly was. Now, so far as the *English* rule depended upon this last consideration, the reason of it has, long since, and entirely, ceased.

But what is still more decisive, in this state, upon the point of seisin, is, that our own decisions have dispensed with it in cases much stronger than the present. For in the case of *Hillhouse* v. *Chester,* 3 *Day's Ca.* 166. it was determined by this Court, that a seisin by the ancestor was unnecessary to the transmission of title by descent ; and in that of *Bush* v. *Bradley,* 4 *Day's Ca.* 294. that a surviving husband might take as tenant by the curtesy, where the wife had been disseised, during the whole period of coverture. Both these determinations, it should be remarked, related to *legal* estates : a circumstance, which renders them vastly stronger than that now before the court.

It is objected, indeed, that the estate of the mortgagor is too *slender* to support a right of dower ; the mortgagor in possession being only *quasi* tenant *at will.* He is so, however, to every practical purpose, only *quoad* the mere right of *possession.*

In point of *interest,* he is regarded as the real owner of the lands ; and the mortgagee, if he recovers possession, must account with him for the *whole* of the issues and profits : they being considered as the mortgagor's, because the *estate* is so. His interest will pass in a devise, under the description of " lands," or " real estate." In *England,* it is assets in equity, and in this state, at law ; and it may, here, be taken in execution, and set off to a judgment-creditor, in *fee simple.* Indeed, it has long been treated as an estate in fee simple, capable of a virtual seisin, not only for the purpose of letting in mere *volunteers,* (as heirs and devisees,) but, perhaps, for *every* substantial purpose, excepting only that of supporting a claim of dower : a claim of the first order, upon principles of natural justice, and more highly favoured by all the analogies of the law, than any other whatever ; not excepting even that of a judgment-creditor.

It may be worthy of remark, also, that the practical hardship of the rule established in *England,* is, in that country, comparatively small : whereas, in this state, it would be very severe. In *England,* a mortgage in *fee* is rarely made ; security upon lands being usually effected, by creating a large term for *years,* by way of mortgage, and thus leaving the right of dower unimpaired ; a consideration, which may have prevented the interposition of Parliament, to alter the rule. Our mortgages, on the other hand, are almost universally in fee.

The reasons, which will justify a departure from well considered *English* precedents, must, I admit, be very plain and cogent. Such, I think, exist in the present case ; and in this opinion I am confirmed by two determinations, entitled to great respect, in the supreme court of the state of *New-York,* (6 *Johns. Rep.* 290. 7 *Johns. Rep.* 278.) as well as by a former decision of the superior court, which has been acquiesced in for many years.

The particular phraseology of our statute concerning dower, though somewhat relied upon at the bar, presents to my mind no difficulty whatever. It clearly furnishes no objection, which would not exist without it. A critical examination of it appears to me wholly unnecessary. Upon every ground, I think the present claim well founded.

*Hartford,* June, 1816.

Fish *v.* Fish.

Decree of probate to be affirmed.